CARAWAY, J.,
dissenting.
Ill respectfully dissent.
The initial inquiry in- this case is to identify which tract is the servient estate. If only one tract, contiguous to the enclosed estate, lies between the -.enclosed estate. and the public road access, that tract should first be considered as the servient estate. Only after such determination of the servient estate is the location of the right of passage “generally” placed along -the shortest route across the ser-vient estate. La. C.C. art. 692. ■ The majority improperly uses the word “generally” in Article 692, not to locate the right of passage on- the servient -estate, but to bring into this case1 a second noncontiguous tract which does not qualify as the servient estate.
The trial court’s judgment- recognizes and imposes the burden of the legal servitude for a right of passage on the Frye Tract which (1) is noncontiguous to the enclosed estate (The 54), and (2) lies to the north, completely out of the most direct route back to the Corley Home tract in the SW/4 of the NW/4 of Section 15 or to the public road in the S/2 of the NW/4 of the SW/4. Those factors normally would never allow the Frye Tract to serve as the servient estate for The 54. The true ser-vient estate is the Sims-Tabor Tract which is the NE/4 of the SW/4 and the South 329 *446 feet of the SE/4 of the NW/4. The Sims-Tabor Tract is contiguous to The 54 along the west line of the NW/4 of the SE/4 and is the land which provides the most direct route to the Corley Home tract or the public road.
The first point to be made clear is that there was no existing property right, owned and in use by the Corleys as a servitude over the Frye Tract. |2There was no conventional servitude of passage owned by the Corleys. While I believe the evidence of such a servitude allegedly established by 30-year acquisitive prescription presented a possibility of such ownership, the issue was pretermitted by the trial court. Therefore, in a phrase employed by this court in the early case of Robinson v. Herring, 20 So.2d 811 (La. App. 2d Cir.1944), the Corleys’ prior passage and use of the Frye Tract had always been “by sufferance of the owner,” the Fryes. The “sufferance” road in Robinson was not across the defendant Herring’s servient estate which was the contiguous tract that could have been made to provide the nearest route to a highway. The “sufferance” road- on the lands of others allowed Herring to escape the imposition of the burden of the legal servitude with the following proviso of the court:
[S]o long as it [the “sufferance” road] is open to plaintiffs use he is not in a position legally to demand a servitude of passage to the highway across the lands of others. When, and if, he is denied the use of this route to the highway, he may then avail himself of the benefícient provisions of the law, which guarantee an enclosed land owner access to the nearest highway.
Id. at 813. Here, the “sufferance” road on the Frye Tract has not remained open because of the Fryes’ right to withdraw the license to Corley and lock the gate. Thus, the servient estate of the Sims-Tabor owners comes into focus for the Corleys’ right of passage.
A second important point, briefly mentioned by the majority and presented in the evidence, is that the point of departure from The 54, northwesterly across the Sims-Tabor Tract, is an existing pipeline right-of-way (personal servitude) that is essential to the trial court’s newly |3adjudicated route. While an actual pipeline agreement, insofar as it burdens the Frye Tract, was presented in evidence, the agreement for the 633 feet of the pipeline across the Sims-Tabor Tract was not reviewed. Thus, as the servient estate, the Sims-Tabor Tract escapes any serious burden for use as the right of passage for The 54. Instead, the estate of the pipeline owner supplies a northwesterly route to the Frye Tract which is essential to the judgment’s encumbrance of the Frye Tract. The record is unclear whether this is a “sufferance” route along the pipeline, since the owner of the pipeline was not made a party.
The 633-foot pipeline route across the Sims-Tabor Tract is less burdensome compared to the route across the Sims-Tabor Tract which would provide The 54 with the nearest access as the legal servitude. That course for a right of passage as shown by the survey would be 1314.37 feet or the north line of the NE/4 of the SW/4. Along that line from the northwest comer of The 54 to the southeast corner of the Corley Home tract, the Corleys would realize the shortest route between the two Corley properties, effectively providing a right of passage to The 54 across one servient estate. That route was never the subject of the plaintiffs’ evidence so as to allow consideration of whether the right of passage could be feasibly placed approximately along that line. Instead, the new legal servitude is imposed on the Fryes’ non-contiguous land across a path 1669.41 *447 feet, first running northwesterly along the pipeline and then turning southwesterly back to the Corley Home tract. The fact that the 1669.41 feet |4has always existed as a “sufferance” road does not make it the legal servitude owed to The 64.
Finally, what makes this ease most unique is that the aim of the Corleys’ suit from the start was never directed at the servient estate owners, the Sims-Tabor group. In fact, members of the Sims-Tabor group were not original defendants and were brought in by the Fryes’ peremptory exception. Even after the Sims-Tabor group became parties, the Corleys made no adverse allegations against the Sims-Tabor group, remaining content with the 633-foot pipeline route across the Sims-Tabor Tract to the Frye Tract. This improperly shifted the burden of proof to the Fryes to prove an access route to the Corley Home tract across the Sims-Tabor servient estate. The burden of proof was on the Corleys as plaintiffs and as owners of the dominant estate to show that the Sims-Tabor tract could not provide any feasible route for access to the Corley Home tract or directly to the public road. Only then might it be shown that the non-contiguous Frye Tract must additionally serve as a second servient estate necessary to reach the Corley Home tract.
The lack of any assertions by the Cor-leys to burden the Sims-Tabor tract as the servient estate, of course, allowed them to avoid the costs of construction of the right of passage across the Sims-Tabor Tract. The Corleys were content to use only the 633-foot pipeline route at no cost in their effort to burden the Frye Tract as a ser-vient estate. This misdirection of the suit by the Corleys against the Fryes obscured the Sims-Tabor Tract’s |Bprime standing as the servient estate obligated for providing the right of passage.
ADDENDUM
_Ll
*448 [[Image here]]